Joseph G. Davis *vs.* Henry Randall.

ᵇ Washington.    Opinion December 4, 1902.

*Stallion.    Recovery for Service.    Registry of Pedigree.    Subsequent Change of*
*Name and Owner.    R. S., c. 38, § 61.    Stat. 1873, c. 135.*

The making and filing, by a former owner or keeper of a stallion of the cer-
tificate required by R. S., chap. 38, § 61, does not inure to the benefit of
any subsequent owner or keeper.

No such owner or keeper, who himself neglects to file such certificate, before
advertising the services of such stallion for breeding purposes, can recover
compensation for such services.

When in a statute clear and unequivocal language is used, which admits of
only one meaning, it must be intended to mean what it has plainly
expressed, and it is not permissible to interpret that which stands in no
need of interpretation.

Exceptions by defendant.    Sustained.

Assumpsit on the following account annexed:

"Henry Randall,

　　　　　　　　　　　　　　　　To Joseph G. Davis, Dr.
1900.

| | |
|---|---:|
| May 27, To services on horse's mouth, | $1.00 |
| June 28, To use of stallion on mare, | 12.00 |
| June 28, To services on horse's mouth, | 1.00 |
| | $14.00" |

The controversy was over the item of $12. for the use of the
stallion.

The case came to this court below on appeal by defendant from
judgment of a trial justice in favor of plaintiff.

Some time in the early spring of 1900, one Foster S. Reynolds of
Lubec bought the stallion in question of one Perry E. Day of
Princeton, in Washington County.    He was then called "Black
Harry," and not generally known in Lubec.    Reynolds brought the
stallion to Lubec and put him in the stable of Joseph G. Davis, the

plaintiff in this case, called the "Klondike Stable." Reynolds then changed the stallion's name to "Success, Jr.," and on March 13, 1900, the following notice appeared in the Lubec Herald, a weekly newspaper printed in Lubec:

" 'SUCCESS, JR.'
Weight 1225 lbs.
Sired by the imported coach horse 'Success,' imported from England, registered in Book 2,500, No. 1,800, color black. Dam full blooded Morgan mare 'Curfew Bell.' 'Success, Jr.,' has a record of 2.26, and will stand at No. Lubec, Klondike stable, during the season of 1900. Fee, $12 to warrant; $2 at service, the balance at birth of colt. This horse is owned by F. S. Reynolds and handled by J. G. Davis," (the plaintiff in this case).

This notice was continued in the Herald down to August 7, 1900. Printed cards bearing a like notice were circulated through the town of Lubec. These advertisements were with the knowledge of the plaintiff, but he testified that he was not responsible for them.

Said stallion was never registered under the name of "Success, Jr."

The plaintiff claimed to have purchased this stallion from F. S. Reynolds sometime in May, 1900. After he purchased him he continued to keep him in the "Klondike Stable," and the mare was sired there.

The plaintiff did not have the stallion recorded in his own name.

Plaintiff offered, in evidence, the following record made by Perry E. Day, the former owner:

" 'Black Harry,'
Age nine years, weight 1170 lbs., sired by 'Success.' Dam foaled by 'Lady Polly,' with the view of keeping said stallion for breeding purposes within the county aforesaid, I hereby register the same in the Registry of Deeds for Washington County, in accordance with Section 61, Chapter 38, Revised Statutes of Maine.

Feb. 1, 1893.

Perry E. Day.
Attest: H. R. Taylor, Register of Deeds."

To the admission of this record the defendant seasonably objected,

but his objection was overruled and the record admitted, to which ruling defendant reserved and alleged exceptions.

*H. E. Saunders,* for plaintiff.

*J. H. Gray,* for defendant.

SITTING: WISWELL, C. J., EMERY, POWERS, SPEAR, JJ.

POWERS, J. Assumpsit by the owner and keeper to recover for the services of a stallion.

The plaintiff advertised the services of the stallion under the name of "Success Jr.," but before doing so did not himself make and file in the registry of deeds the certificate required by R. S., c. 38, § 61. Against the defendant's objection, such a certificate by a former owner of the stallion under the name of "Black Harry" was introduced in evidence. The defendant excepts to the instruction of the presiding justice that when such a certificate was once filed, it attached to the animal, so far as to give the benefit of it to any subsequent owner, while the service was confined to that county, and he was advertised, if at all, under the same name that he bore in the certificate originally filed; that it was not necessary for any subsequent owner or keeper to file another certificate in order to comply with the statute; and that it was not in controversy that the horse called Black Harry in the original certificate was there represented to have been one of the progeny of a horse known as "Success" and in that sense was, in truth and in fact, a "Success Jr."

The statute is as follows: "The owner or keeper of any stallion for breeding purposes, before advertising, by written or printed notices, the services thereof, shall file a certificate with the register of deeds in the county where said stallion is owned or kept, stating the name, color, age, and size, of the same, together with the pedigree of said stallion as fully as obtainable, and the name of the person by whom he was bred. Whoever neglects to make and file such certificate shall recover no compensation for said services."

In construing this statute it is to be observed that the language used is not technical, but that its popular meaning is clear and

unequivocal. The duty of filing the certificate "before advertising" is, in the first sentence, by the plain command of the statute, imposed upon the owner or keeper. What owner or keeper? Evidently any and all owners or keepers who advertise the stallion's services. Then follows the provision, "Whoever neglects to make and file such certificate shall recover no compensation for such services." The plaintiff made and filed no certificate, but did advertise the services of the stallion. Can it be said that this was no neglect on the plaintiff's part because a former owner performed the duty imposed by the statute upon such owner? If such was the intention of the legislature it would have been easy to have said so. On the contrary, in as plain words as plain people can use, it has imposed the duty of making and filing the certificate upon all who advertise, and, when the services are advertised, has expressly confined the right to recover to those, and those only, who, before advertising, do not neglect to file such certificate.

It is urged that such a requirement is unreasonable; that the information having been once given to the public, no useful purpose would be subserved by having it spread anew upon the record by each successive owner. That consideration is for the legislature. The language used being clear and unequivocal, it must be intended to mean what it has plainly expressed. There is nothing in the context, or the consequences, which affords adequate grounds for departing from the rule of literal interpretation. When clear and unequivocal language is used, which admits of only one meaning, it is not permissible to interpret what has no need of interpretation. Endlich on Interpretation of Statutes, § 4. Neither is it clear that the requirement is unreasonable. If the purpose of the statute is the better preservation of horse records, as appears by the title to the original act, Stat. 1873, c. 135, they should be so kept that the record of the horse may be found and identified. In the case at bar, if the defendant sought in the registry of deeds for the record of "Success Jr.", he would find no certificate filed by the plaintiff Davis, who owned, kept, and advertised the stallion, but only a certificate by one Day relating to "Black Harry," who was a "Success Jr." in the same sense only as all the other progeny of "Success." It would be

merely a matter of conjecture whether the certificate filed related at all to the horse advertised. We believe rather that when the legislature enacted the statute quoted, and in the same section further imposed a penalty of $100.00 upon any one who wilfully made and filed a false certificate, it intended to give to the defendant, and those in like situation, this liability of the owner or keeper of the horse, who advertised him, with whom they contracted, to whom they were to pay their money, and upon the strength of whose representations the contract may well be presumed to have been made, as security that the statements made in the certificate required were, so far as he knew, true in fact.

*Exceptions sustained.*